IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LINDA MORRIS**,

        Plaintiff,

        v.

**CITY OF SPRINGFIELD**, a municipal corporation; **GRETA UTECHT**; **RANDALL B. GROVES**; and **PETER FEHRS**,

        Defendants.

_____

**Civ. No. 6:14-cv-01550-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Between December 2006 and November 2013, plaintiff Linda Morris worked for the City of Springfield as a Clerk and later as a Program Technician. On November 19, 2013, plaintiff's coworker, Gerry Becker, reported to defendant Randall Groves that plaintiff had fraudulently submitted a magazine subscription form in Becker's name. Following this report, plaintiff was placed on paid administrative leave pending investigation and defendant Peter Fehrs hired a third-party forensic document examiner, James Green, to assess the subscription form and additional handwriting samples. On November 21, 2013, Green issued a report concluding that plaintiff had filled out the subscription form. On November 25, 2013, plaintiff attended a resolution options meeting in which she was provided two alternative options: (1) resignation/retirement or (2) further disciplinary investigation. Despite repeated requests for additional information, defendants provided plaintiff with only a cursory description of the

allegations against her: non-work-related services or products were purchased in plaintiff's handwriting in someone else's name. Plaintiff was given approximately twenty-four hours to decide whether she would retire. Plaintiff retired the following day.

This Court is asked to consider whether the City of Springfield constructively discharged plaintiff pursuant to a "formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure." *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citations and internal quotation marks omitted). Because plaintiff failed to establish that defendants acted pursuant to a policy, longstanding practice, or custom, this Court finds that the City of Springfield is not liable under 42 U.S.C. § 1983. Thus, defendants' motion for summary judgment, ECF No. 12, is GRANTED.

**PROCEDURAL AND FACTUAL BACKGROUND**

This action arises out of an alleged constructive discharge. Plaintiff began working for the City of Springfield as a Clerk in December 2006. *See* Decl. of Greta Utecht 1, ECF No. 15-1. Plaintiff was promoted to a Program Technician on February 22, 2011. *Id.* at 2–4.

In late 2013, Becker received the magazine *Old House Journal* in the mail with an invoice charging her for the subscription. *See* Decl. of Andrea D. Coit 6, ECF No. 16-1.[1] Becker, who had not ordered the magazine, disputed the invoice charges and requested a copy of the completed subscription form. *Id. Old House Journal* subsequently provided Becker with the requested copy. *Id.* at 6, 11.

On November 19, 2013, Becker reported the fraudulent subscription to defendant Groves. *Id.* at 6–7. Becker informed Groves that she believed plaintiff had submitted the subscription in

---

[1] Becker was charged $46.00 for a two-year subscription. *Id.* at 11.

her name. *Id.* Becker then provided Groves with a copy of the subscription form and handwriting samples removed from plaintiff's steno pad. *See id.* at 7, 12–14.

Plaintiff, along with defendant Groves, defendant Fehrs, Brian Evanoff, and Andy Limbird,[2] attended an initial disciplinary meeting in Grove's office later that afternoon. *See* Decl. of Peter Fehrs 1, ECF No. 13-1. During that meeting, Groves informed plaintiff:

> [T]his morning we received information, an allegation into certain activities, behaviors on your part that we're going to have to investigate. And it's . . . going to take a little bit to pull everything together, but in the meantime, they're of a nature that I'm placing you on paid administrative leave.

*Id.* at 2. Groves declined to provide any additional information. *See id.* 2–3; *see also* Pl.'s Resp. Summ. J. 2, ECF No. 17-1 ("I was not told the nature of the allegations against me.").

Also on November 19, 2013, defendant Fehrs hired forensic document examiner Green to determine whether plaintiff had submitted the subscription in Becker's name. *See* Decl. of Peter Fehrs 2, ECF No. 13. Fehrs provided Green with the subscription form and handwriting samples taken from plaintiff's steno pad. *See id.*

On November 21, 2013, Green issued his examination report in which he determined that "[a]s a result of the comparison process, it is highly probable Ms. Morris wrote the name and address information on the form." *Id.* at 6, ECF No. 13-1. The report defined "highly probable" as "did write." *Id.* at 9. Following receipt of the report, Fehrs contacted Limbird and advised him that "the City had gathered information that showed that Plaintiff had forged the signature of a co-worker on a magazine subscription form." *Id.* at 2, ECF No. 13.[3] Fehrs further informed

---

[2] At that time, Limbird was plaintiff's union steward.

[3] There is no indication in the record that Limbird informed plaintiff that she was accused of forging a co-worker's signature on a magazine subscription. *See* Decl. of Andrea D. Coit 39, ECF No. 16-1 ("Q. . . . So . . . did you get the impression that [Limbird] knew what the investigation was about. A. No. . . . [H]e told me he didn't know what it was about.").

Limbird that plaintiff could either: (1) resign/retire on November 25, 2013 or (2) undergo a formal disciplinary investigation. *Id.* Fehrs provided Limbird with a redacted version of Green's report, which was later provided to plaintiff. *Id.*; *see also id.* at 12–18, ECF No. 13-1 (redacted report); Decl. of Andrea D. Coit 39, ECF No. 16-1.

On November 25, 2013, plaintiff, along with defendant Utecht, defendant Fehrs, and Limbird, attended a "resolution options meeting." *See* Decl. of Peter Fehrs 19–35, ECF No. 13-1. At that meeting, Utecht[4] presented plaintiff with two alternative options: (1) resignation/retirement or (2) disciplinary investigation. Pursuant to the first option, Utecht informed plaintiff that: she would receive compensation for her vacation time and sick leave; all documents relating to the subscription investigation would be removed from her personnel file, including the record of administrative leave; and the disciplinary investigation would be terminated. *See id.* at 21- 22, 27. Pursuant to the second option, defendants would conduct a further disciplinary investigation into the underlying forgery allegation. If the forgery allegations were confirmed, plaintiff would be terminated; she would not receive compensation for her accumulated sick leave; and the matter would be referred to the district attorney for prosecution. *See id.* at 20–21, 29. In discussing this second option, Utecht noted that she had previously consulted with the police and believed that the police would follow her advice as to whether to criminally charge plaintiff for criminal forgery. *Id.* at 20, 23, 29.

During the course of the meeting, plaintiff and Limbird repeatedly asked defendants for a more specific description of the allegations against plaintiff. *See id.* at 23–27. Defendants declined to provide a copy of the subscription form or identify the source of the allegations. *See*

---

[4] At that time, Utecht was Human Resources Director for the City of Springfield. *See* Decl. of Peter Fehrs 19, ECF No. 13-1; Pl.'s Resp. Summ. J. 14, ECF No. 17-2.

*id.* at 24. Defendants eventually described the alleged forgery as follows: "[non-work-related] services or products were purchased in [plaintiff's] handwriting . . . . [i]n someone else's name." *Id.* at 24, 26–27. Utecht indicated that this alleged forgery had taken place within the prior three-month period. *Id.* at 25.

At the end of the meeting, Utecht scheduled an initial investigatory interview for the following afternoon, November 26, 2013. *Id.* at 33–34. Plaintiff was instructed that defendants would initiate the formal disciplinary investigation if she didn't resign or retire prior to the initial investigatory interview. *See id.* at 32.

Later that afternoon, plaintiff contacted her friend, John Kolego, who is an attorney licensed in the state of Oregon. Pl.'s Resp. Summ. J. 2, ECF No. 17-1. Kolego declined to provide legal advice based upon the limited information provided. *Id.*; *but see* Decl. of Andrea D. Coit 64, ECF No. 16-1 ("I believe I did speak with him, and at that point he had said, 'It's just not worth it. Just – you're eligible to retire,' and he suggested that I retire.").

On November 26, 2013, plaintiff submitted a letter of retirement to the City of Springfield. Decl. of Andrea D. Coit 40, ECF No. 16-1. That letter provided in relevant part: "[d]ue to the prevailing circumstances I would like to inform you that I will be retiring from the fire department administration effective November 26, 2013." *Id.* at 48.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The

5 – OPINION AND ORDER

court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiff originally asserted three claims, including: violation of procedural due process under 42 U.S.C. § 1983; age discrimination, ORS § 659A.030; and Intentional Infliction of Emotional Distress. Because plaintiff does not dispute that service of process was insufficient as to individual defendants,[5] this Court's inquiry is limited to plaintiff's remaining procedural due process claim asserted against the City of Springfield.

### I. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. art. XIV, § 1. A section 1983 claim based upon the deprivation of procedural due process has three elements, including: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) lack of process. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Because defendants do not dispute that plaintiff has met her burden under the first and third elements, this Court must determine whether the City of Springfield deprived plaintiff of her property interest in continued employment.

---

[5] Plaintiff's claims against defendants Utecht, Groves, and Fehrs are **DISMISSED** without prejudice for insufficient service of process.

Plaintiff contends that her retirement on November 26, 2013 was involuntary. To assert constructive discharge under a coercion theory, an employee need "come forward with sufficient evidence to demonstrate that a reasonable person in [her] position would feel [she] had no choice but to retire." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 941 (9th Cir. 2009) (citation and internal quotation marks omitted). To determine whether a retirement decision meets this objective standard, this Court considers the factors outlined in *Knappenberger*:

> 1. Whether the employee was given an alternative to retirement;
>
> 2. Whether the employee understood her choice;
>
> 3. Whether the employee had a reasonable time in which to make her decision; and
>
> 4. Whether the employee could select the timing of the retirement or resignation.

566 F.3d at 941. In addition to the factors explicitly identified in *Knappenberger*, this Court also takes into consideration an additional factor outlined in a subsequent district court case in this circuit:

> 5. Whether threat of consequences reach beyond the employee's employment.

*Siddiqui v. Univ. of Wash.*, No. C14–349RAJ, 2015 WL 1248945, at *6 (W.D. Wash. Mar. 18, 2015); *see also Angarita v. Cnty. of St. Louis*, 981 F.2d 1537, 1545 (8th Cir. 1992)).

In this case, plaintiff was provided with an alternative to retirement; she had the option to challenge the forgery findings in a further disciplinary investigation. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("[T]he fact remains that plaintiff had a choice. [Plaintiff] could stand pat and fight." (citation and internal quotation marks omitted)). Nonetheless, plaintiff's option to "stand pat and fight" was significantly compromised by the

other *Knappenberger* factors. Plaintiff neither received a specific complaint of the allegations

against her nor was she told the source of the allegations. *See Angarita*, 981 F.2d at 1545

(identifying these factors as supportive of coercion). In fact, the only substantive description of

the allegation—"[non-work-related] services or products were purchased in [plaintiff's]

handwriting . . . . [i]n someone else's name"—was presented during plaintiff's resolution options

meeting on November 25, 2013; approximately twenty-four hours before a retirement decision

was required. *See* Decl. of Peter Fehrs 24, 26–27, ECF No. 13-1. The disciplinary investigation

option itself appeared to have been undermined by prejudgment. Defendant Utecht repeatedly

emphasized that "they believed" plaintiff had committed forgery. *See id.* at 28. These comments,

particularly when buttressed by a report issued by Green, who was described by Utecht as

"probably the best in Oregon," *see id.* at 20, tend to show that defendants had pre-determined the

outcome of a further disciplinary investigation, *see Hollist v. Madison Cnty.*, No. 4:13–cv–

00139–BLW, 2014 WL 5089941, at *4 (D. Idaho Oct. 9, 2014) (identifying decisionmaker bias

as a factor supportive of coercion). Utecht also threatened[6] plaintiff with a criminal prosecution,

which Utecht described as dependent[7] upon her recommendation. *See Angarita*, 981 F.2d at 1545

(identifying threat of arrest as a factor supportive of coercion); *but see Hargray*, 57 F.3d at

1568–70 (noting that resignation could be voluntary even if the only alternative is criminal

charges).

These coercive factors are not cleansed by a twenty-four deadline extension or by

plaintiff's conversation with an attorney. As to the extension, an additional twenty-four period

does not alter the underlying coercion flowing from insufficient notice and decisionmaker bias.

---

[6] Defendants dispute this characterization. This analysis, however, is based upon inferences drawn in the light most favorable to the non-moving party.
[7] Utecht stated: "[T]he police [are] going to basically follow my advice on this. So if – if I want them to take this on, they've gone and talked with the prosecutor already, they'll take it on." Decl. of Peter Fehrs 29, ECF No. 13-1.

*See Sai v. H & R Block Enters., Inc.*, Civil No. 09–00154 SOM/BMK, 2010 WL 520633, at *6 (D. Haw. Feb. 11, 2010) ("Sai's retirement is not cleansed of coercion by [defendant's] offer to let Sai take a few days to choose between retirement and termination. To rule otherwise would provide a legal loophole. . . ."). As to plaintiff's conversation with attorney Kolego, there is conflicting information in the record as to whether plaintiff received *legal advice*. *Compare* Pl.'s Resp. Summ. J. 2, ECF No. 17-1 ("I was advised that he could not give me instructions because I did not know what I had alleged to have forged and its nature."), *with* Decl. of Andrea D. Coit 64, ECF No. 16-1 ("I believe I did speak with him, and at that point he had said, 'It's just not worth it. Just – you're eligible to retire,' and he suggested that I retire.").[8] Even to the extent that Kolego did recommend retirement, such advice was compromised by insufficient notice of the allegations against plaintiff.

Taking this evidence in the light most favorable to plaintiff, there is a genuine issue of material fact regarding whether a reasonable person in plaintiff's position would have felt compelled to retire based on the totality of the circumstances.

## II. Monell Liability[9]

A plaintiff may establish municipal liability under 42 U.S.C. § 1983 in one of three ways. First, a plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom. *Gillette*, 979 F.2d at 1346 (citations omitted). Second, a plaintiff may demonstrate that the municipal employee who committed the alleged constitutional violation was an official with final policy-making authority and that the challenged action itself constituted an act of official

---

[8] Advice of legal counsel is considered a factor supportive of voluntariness. *See Hargray*, 57 F.3d at 1568; *Rau v. United Parcel Serv., Inc.*, No. 1:12–CV–00194–BLW, 2013 WL 3947147, at *6 (D. Idaho July 31, 2013).
[9] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

9 – OPINION AND ORDER

governmental policy. *Id.* (citations omitted). Third, a plaintiff may demonstrate that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Id.* (citations omitted). Because plaintiff only proffers an argument under the first theory of municipal liability, this Court's inquiry will focus on that theory.

Plaintiff's liability theory relies upon an email sent by defendant Groves to defendants Fehrs and Utecht on November 21, 2013. That email provides in relevant part:

> [Fehrs], I think it's fine although I wouldn't want [Limbird] to contact [Becker] without us first seeing if she is comfortable in meeting with him on this issue. As for [plaintiff's] ability to review the material, I don't have a problem with it. However, I would characterize the situation a little differently. In the past I've said things like, "here is the information for you to consider. This is not a negotiation. I will begin the investigation on xx and if you decide to resign prior to my initiation of the investigation, I will not investigate. However, if you are still employed with us on xx, I will turn over this report to the Police and the Investigation will commence."
>
> We don't really need [Limbird] to say that [plaintiff] has until Monday, or whatever the day is to avoid the investigation.

Pl.'s Resp. Summ. J. 3, ECF No. 17-2. This Court, having considered the email at issue, is not persuaded that this email is sufficient to establish a formal governmental policy. Absent a formal governmental policy, plaintiff must demonstrate a longstanding practice or custom that is so persistent and widespread that it constitutes a permanent and well settled policy. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). Such liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out a policy." *Id.* (citations omitted). The email cited, although arguably indicative of *a practice or custom* endorsing resignation in lieu of investigation and criminal referral, does not reflect the full range of conduct faced by plaintiff in this matter. In particular, this Court emphasizes the

10 – OPINION AND ORDER

second factor identified in *Knappenberger,* i.e., whether the employee understood her choice. As indicated in section I above, plaintiff's ability to understand her choice was compromised by defendants' failure to apprise her of the allegations against her. The email above does not support this necessary component. *See* Pl.'s Resp. Summ. J. 3, ECF No. 17-2 ("As for [plaintiff's] ability to review the material, I don't have a problem with it.").[10] As a result, plaintiff has failed to establish that defendants acted pursuant to a longstanding practice or custom.

## CONCLUSION

For these reasons, defendants' motion for summary judgment, ECF No. 12, is GRANTED.


IT IS SO ORDERED.


DATED this 10th day of June, 2015.

_____
**Michael J. McShane**
**United States District Judge**

---

[10] This Court notes that absent this notice component, plaintiff's constructive discharge argument relies primarily on the threat of criminal referral. However, that threat alone did not create a genuine issue of material fact for the jury. *See Hargray*, 57 F.3d at 1568 ("[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges... The one exception to this rule is where the employer actually lacked good cause to believe that grounds for the termination and the criminal charges existed." (citation omitted)).